ANDREW E. PARIS (SBN 162562)
GRACE W. KANG (SBN 271260)
SAYAKA KARITANI (SBN 240122)
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100
drew.paris@alston.com
grace.kang@alston.com
sayaka.karitani@alston.com

Attorneys for Defendant
**DIRECTV, INC.**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACEN MANAGEMENT LLC, a Connecticut limited liability company, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>DIRECTV, Inc., a Delaware corporation,<br><br>        Defendant. | Case No.:  3:11-cv-00384-WA<br><br>Hon. William  Alsup<br><br>**DIRECTV'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:        April 21, 2011<br>Time:       2:00 p.m.<br>Judge:     Hon. William Alsup<br>Courtroom:  9 |

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................4

III.    DISCUSSION ........................................................................................................6

      A.      This Court Lacks Subject Matter Jurisdiction Over Jacen's Claims Because This Is A Local Action That May Only Be Brought In Connecticut Courts. ...............6

      B.      DIRECTV Is Also Entitled To Dismissal Under Fed. R. Civ. P. 12(B)(6). ...............10

      C.      The Court Should Dismiss Jacen's UCL Claim Under The Doctrine Of Equitable Abstention................................................................................................12

      D.      Jacen Fails To Allege The Required Element Of Injury In Fact For Its UCL and Negligence Claims. ...................................................................................16

      E.      For The Same Reasons, Jacen Lacks Standing.........................................................18

      F.      Jacen's UCL Claim Should Be Dismissed For Failure To Allege Unfair Conduct As a Matter of Law.............................................................................19

            1.      Jacen Fails to Allege Sufficient Facts To Establish Unfairness Under the *Cel-Tech* "Tethering" Test ........................................................19

            2.      The Complaint Fails to Allege Sufficient Facts Under the Other Unfair Practices Tests....................................................................................24

IV.     CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)...................................11, 24

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) .............................................................................19

*Buena Vista, LLC v. New Resource Bank,* No.
C 10-01502 CW, 2011 WL 250361 (N.D. Cal. Jan. 26, 2011)..............................24

*Building Owners & Managers Ass'n Int'l v. F.C.C.,*
254 F.3d 89 (D.C. Cir. 2001) .............................................................................14

*Churchill Village, L.L.C. v. Gen. Elec. Co.,*
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..........................................................20, 21

*Columbia River Packers' Ass'n v. McGowan,*
219 F. 365 (9th Cir. 1914) ...................................................................................6

*DeCoe v. Gen. Motors Corp.,*
32 F.3d 212 (6th Cir. 1994) .................................................................................8

*Edgerly v. City & County of San Francisco,*
599 F.3d 946 (9th Cir. 2010) ...........................................................................21, 22

*Ellenwood v. Marietta Chair Co.,*
158 U.S. 105 15 S.Ct. 771, 39 L.Ed. 913 (1895) .................................................6

*Epstein v. Wash. Energy Co.,*
83 F.3d 1136 (9th Cir. 1966) ..........................................................................11, 17

*In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.,*
No. MDL 1785, 2008 WL 2308759 (D.S.C. Apr. 9, 2008)....................................9

*Hallaba v. Worldcom Network Servs., Inc.,* 196 F.R.D. 630 (N.D. Okla. 2000)..........................10

*Hayes v. Gulf Oil Corp.,* 821 F.2d 285 (5th Cir. 1987) ................................................9

*Jadeja v. Redflex Traffic Sys. Inc.,*
No. C 10-04287 WHA, 2011 WL 499967 (N.D. Cal. Feb. 8, 2011)......................19

*Jarbough v. Attorney Gen. of U.S.,*
483 F.3d 184 (3d Cir. 2007)................................................................................8

*Josevig-Kennecott Copper Co. v. James F. Howarth Co.,*
   261 F. 567 (9th Cir. 1919) ...................................................................................6

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................23

*Kingsborough v. Sprint Commc'ns Co.,*
   673 F. Supp. 2d 24 (D. Mass. 2009) ...............................................................9, 10

*Livingston v. Jefferson,*
   15 F.Cas. 660 (Va. Cir. Ct. 1811) ....................................................................6, 9

*Lorenzo v. Qualcomm Inc.,*
   No. 08cv2124 WQH (LSP), 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ...........19

*Lozano v. AT&T Wireless Servs. Inc.,*
   504 F.3d 718 (9th Cir. 2007) ...................................................................19, 20, 25

*Marketing Info. Masters, Inc. v. Board of Trustees,*
   552 F. Supp. 2d 1088 (S.D. Cal. 2008) ..............................................................11

*Miller & Lux Inc. v. Nickel,*
   149 F. Supp. 463 (N.D. Cal. 1957) ......................................................................6

*Morris v. BMW of North Am., LLC,*
   No. C 07-02827 WHA, 2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) .............20, 25

*Movassate v. Dudley Ridge Props., LLC,*
   No. 10-CV-02313-LHK, 2011 WL 672773 (N.D. Cal. Feb. 16, 2011)......................5

*Nat'l Science & Tech. Network, Inc. v. F.C.C.,*
   397 F.3d 1013 (D.C. Cir. 2005) .........................................................................14

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang,*
   No. C. 02-01084, 2002 WL 1787214 (N.D. Cal. July 22, 2002), *aff'd,* 376 F.3d 831 (9th
   Cir. 2004) .........................................................................................................14

*Parks Sch. of Bus. v. Symington,*
   51 F.3d 1480 (9th Cir. 1995) .............................................................................11

*Phipps v. Wells Fargo Bank, N.A.,*
   No. CV F 10-2025 LJO SKO, 2011 WL 302803 (E.D. Cal. Jan. 27, 2011)............23

*Portney v. CIBA Vision Corp.,*
   No. SACV 07-0854, 2008 WL 5505517 (C.D. Cal. July 17, 2008) .................11, 12

*Prawoto v. Primelending,*
   720 F. Supp. 2d 1149 (C.D. Cal. 2010) .............................................................6, 7

*Renee v. Duncan,*
623 F.3d 787 (9th Cir. 2010) ...............................................................16, 18

*Reudy v. Clear Channel Outdoor, Inc.,*
No. 02-5438 SC, 2010 WL 4918792 (N.D. Cal. Nov. 29, 2010) ...........................16

*Robertson v. Dean Witter Reynolds, Inc.,*
749 F.2d 530 (9th Cir. 1984) .....................................................................11

*Rosal v. First Fed. Bank of Cal.,*
671 F. Supp. 2d 1111 (N.D. Cal. 2009) .........................................................23

*Sanders v. Apple Inc.,*
672 F. Supp. 2d 978 (N.D. Cal. 2009) ...........................................................19

*Simila v. Am. Sterling Bank,*
No. 09-CV-781 JLS (CAB), 2010 WL 3988171 (S.D. Cal. Oct. 12, 2010) .....................21, 23

*Suzuki v. Hitachi Global Storage Tech., Inc.,*
No. C 06-07289 MHP, 2007 WL 2070263 (N.D. Cal. July 17, 2007) ...........................17, 18

*Tourgeman v. Collins Fin. Servs., Inc.,*
No. 08-CV-01392-JLS-NLS, 2009 WL 6527757 (S.D. Cal. Aug. 6, 2009) .........................21

*United States v. Byrne,*
291 F.3d 1056 (9th Cir. 2002) .....................................................................6

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ......................................................................5

*Van Slyke v. Capital One Bank,*
No. C 07-00671 WHA, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ................................20

*Williams v. McDaniel,*
119 F. Supp. 247 (D. Nev. 1953) ...............................................................8, 9

CALIFORNIA STATE CASES

*Alvarado v. Selma Convalescent Hosp.,*
153 Cal. App. 4th 1292 (2007) ...............................................................12, 16

*Bardin v. Daimlerchrysler Corp.,*
136 Cal. App. 4th 1255 (2006) ....................................................................21

*Camacho v. Auto. Club of Southern Cal.,*
142 Cal. App. 4th 1394 (2006) ....................................................................25

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ............................................................... 18, 20, 21, 23-25

*Civic Western Corp. v. Zila Indus., Inc.*,
    66 Cal.App.3d 1 (1977) ...............................................................................9, 18

*Desert Healthcare Dist. v. Pacificare, FHP, Inc.*,
    94 Cal. App. 4th 781 (2001) ................................................................................12

*Fairrington v. Dyke Water Co.*,
    50 Cal.2d 198 (1958) ...........................................................................................8

*Foundation Engineers, Inc. v. Super. Ct.*,
    19 Cal.App.4th 104 (1993) ...................................................................................8

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (2003) ........................................................................23, 24

*In re Catalano*,
    29 Cal. 3d 1 (1981) .............................................................................................21

*K.R.L. P'ship v. Super. Ct.*, 120 Cal.App.4th 490 (2004) ..........................................7

*Massae v. Super. Ct.*,
    118 Cal.App.3d 527 (1981) ...............................................................................7, 8

*Miller v. Nat'l Broad. Co.*,
    187 Cal.App.3d 1463 (1986) .................................................................................9

*People v. Wilkinson*,
    248 Cal. App. 2d Supp. 906 (1967) ..................................................................21, 22

*Samura v. Kaiser Foundation Health Plan, Inc.*,
    17 Cal. App. 4th 1284 (1993) ..............................................................................12

*Scripps Clinic v. Super. Ct.*,
    108 Cal. App. 4th 917 (2003) ..............................................................................24

*Shamsian v. Dep't. of Conservation*,
    136 Cal. App. 4th 621 (2006) .........................................................................12, 15

*Smith v. State Farm Fire*,
    93 Cal. App. 4th 700 (1992) ................................................................................20

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ........................................................................20, 24, 25

*Warsaw v. Chicago Metallic Ceilings, Inc.*,
    35 Cal.3d 564 (1984) .........................................................................................7, 8

*Williams v. Merced Irrigation Dist.*,
    4 Cal.2d 238 (1935) .............................................................................................7

**FCC AUTHORITIES**

*In re Craig Wirth,*
   CSR 7861-O, 2010 WL 4411023 (F.C.C. Nov. 5, 2010) .......................................................14

*In re CS Wireless Systems, Inc. d/b/a Omnivision of San Antonio,*
   CSR 4947-O, 1997 WL 631407 (F.C.C. Oct. 14, 1997)......................................................14

*In re Philip Wojcikewicz*
   CSR-6030-0, 2003 WL 22227634 (F.C.C. Sept. 25, 2003).................................................14

*In re Preemption of Local Zoning Regulation of Satellite Earth Stations and Restrictions on*
   *Over-the-Air Reception Devices,* FCC 98-273,
   1998 WL 888546 (F.C.C. Dec. 23, 1998)..................................................................13, 16, 17

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

§ 207 of the Telecommunications Act of 1996, Pub. L. No. 104-104,
   110 Stat. 56 (1996)..................................................................................................................2, 13

15 U.S.C. § 45(n) ..............................................................................................................................25

47 U.S.C. § 154(i) .............................................................................................................................14

47 U.S.C. § 253(d) ..............................................................................................................................2

47 U.S.C. § 303(v) ......................................................................................................................13, 15

47 C.F.R. § 1.4000(a)................................................................................................................3, 16, 17

47 C.F.R. § 1.4000(b)........................................................................................................................17

47 C.F.R. § 1.4000(e)........................................................................................................................15

47 C.F.R. § 1.401 ....................................................................................................................2, 14, 16

47 C.F.R. § 1.425 ................................................................................................................................2

Fed. R. Civ. P. 12(b)(1).................................................................................................................1, 10

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 5, 10, 11, 23, 24

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Cal. Bus. & Prof. Code § 17200 ...............................................................................5, 12, 19, 20

Cal. Bus. & Prof. Code § 17204 .......................................................................................................18

Cal. Penal Code § 602(m) ...................................................................................................... 3, 21-23

Cal. Civ. Proc. Code § 392 ...........................................................................................................7, 8

         vi         

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OTHER AUTHORITIES**

2 Witkin, *California Criminal Law, The Trespass Statute* § 248 (3d ed. 2000), at 278...............22

5 Witkin, *Summary of California Law, Torts* § 696 (10th ed. 2005), at 1021-1022 .......................9

*Restatement (Second) of Torts* § 168 (1965)...................................................................................7

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

        PLEASE TAKE NOTICE that in Courtroom 9 of this Court located at 450 Golden Gate Avenue, San Francisco, California, 94102, on April 21, 2011 at 2 p.m., or as soon thereafter as this matter may be heard, defendant DIRECTV, Inc. ("DIRECTV") will and hereby does move this Court for an order dismissing the complaint of Jacen Management LLC ("Jacen"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

        DIRECTV requests that the Court dismiss Jacen's complaint in its entirety on the grounds that:  (1) the Court lacks subject matter jurisdiction; (2) Jacen lacks standing under Fed. R. Civ. P. 12(b)(1); and (3) for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6).   This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice filed herewith, and other papers and pleadings on file and on such other argument and evidence as may be presented to the Court at or prior to the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**      **INTRODUCTION**

        This case is a putative class action based on a dispute over defendant DIRECTV, Inc.'s ("DIRECTV") authorization to install satellite television reception equipment ("Equipment") in residential rental properties at the request of tenants.  Plaintiff Jacen Management LLC ("Jacen") is the owner of a Connecticut apartment building.  It contends that DIRECTV has "encroached" upon its property and installed Equipment without its authorization at three tenants' units.  Jacen alleges that DIRECTV's reliance on the tenants' certification in a DIRECTV document ("Permission Form") that the tenant obtained Jacen's consent for the installations is unlawful.  Using the Permission Form as a springboard, Jacen asserts that DIRECTV's installation activity at rental properties across the country constitutes a trespass that can be pursued in a nationwide class action on the theory that such conduct is an "unfair" business practice and a negligent breach of a "legal duty not to invade" landlords' property without consent.

        Jacen's putative class claim founders at the outset because this Court lacks subject

matter jurisdiction under the local action doctrine. The local action doctrine has been a fundamental principle of federal court jurisdiction since at least 1811, and requires that suits involving real property interests be brought in a forum encompassing the property. In the Ninth Circuit, the character of an action is determined by the nature of the relief sought. Jacen seeks two forms of relief, both of which involve the determination of real property rights and injury to real property: (1) an injunction barring DIRECTV from entering Jacen's and the putative class members' property without their written consent and requiring the removal of DIRECTV Equipment installed upon it, and (2) tort damages premised on damage allegedly done to Jacen's building during the Equipment installation. Under the applicable law, both these forms of relief are local in nature. Moreover, Jacen's claims are founded upon trespass, which is the quintessential local action. Because the Court lacks jurisdiction, it should dismiss the case.

While the jurisdictional inquiry ends the matter, even if the Court had subject matter jurisdiction, it should abstain from exercising it. The doctrine of equitable abstention is well established in California and is applied by courts to abstain from adjudicating actions where complex regulatory schemes are implicated and which may result in the court's interference with the functions of an administrative agency. That is precisely the situation here. The Federal Communications Commission ("FCC") has exclusive jurisdiction to issue rules related to the installation of satellite dishes under the Telecommunications Act of 1996 and has issued the Over-the-Air-Reception Devices ("OTARD") Rule. Jacen's requested relief is a nationwide injunction requiring DIRECTV to obtain the landlord's consent in writing before performing *any* Equipment installations and to seek consent a second time where installations have already been performed and remove Equipment if the landlord will not grant it. Such an injunction is tantamount to an FCC rule and should only be issued by the FCC after due consideration and an appropriate comment period in accordance with federal law. *See* 47 U.S.C. § 253(d); 47 C.F.R. §§ 1.401-1.425.

Jacen has also failed to allege sufficient facts to establish that it has suffered any cognizable injury. Jacen's claims are premised on assertions that DIRECTV did not have authorization to install the Equipment; however, landlord consent is often not required, as a matter of law. Under the FCC's OTARD Rule, DIRECTV has no obligation to obtain consent from landlords

1    when installing satellite dishes in areas within the "exclusive use or control" of the tenant.  47 C.F.R.

2    § 1.4000(a).  Such areas include the balcony, balcony railing and patio of an apartment unit and are

3    even broader in townhomes, condominiums and single family residences.  Whether landlord consent

4    is necessary turns on the specific terms of the tenant's lease and the location and method of the

5    installation.  The complaint, however, does not attach any of the three leases at issue, or allege where

6    or how the Equipment was installed.  Jacen pleads only that the Equipment is installed in "areas" of

7    its property and conclusorily that it is installed "illegally."  Cmplt., ¶ 18.  Absent well-pleaded facts

8    establishing that the three installations at issue are outside of the exempted areas governed by the

9    OTARD Rule, Jacen has not established that it has suffered an injury.

10          Secondly, Jacen has not pled that it did not consent to the installation of the

11    Equipment at the three tenants' units.  Rather, Jacen alleges that its tenants completed Part 2 of the

12    Permission Form in which they certified that Jacen had provided them with consent.  Jacen carefully

13    alleges only that *DIRECTV* did not obtain Jacen's consent.  There is no legal requirement, FCC or

14    otherwise, that DIRECTV interface directly with a landlord to obtain landlord consent.  Absent

15    express allegations that Jacen never consented, both Jacen's claims fail for lack of injury and

16    causation, and Jacen lacks Article III standing for the same reason.

17          Finally, DIRECTV's Permission Form does not violate the UCL.  Jacen makes no

18    claim that DIRECTV has committed an unlawful or fraudulent practice.  It instead attempts to show

19    unfairness by alleging that Jacen's Connecticut-based claim is tethered to California's willful

20    trespass statute, Cal. Penal Code § 602(m).  Yet the purpose of that statute is to prevent squatting

21    and the intentional, permanent occupation of property in California.  DIRECTV's alleged practice of

22    obtaining landlord consent in written or verbal form in interactions with the tenants does not violate

23    the public policy embodied in that statute (or any other).

24          In sum, the complaint should be dismissed for want of subject matter jurisdiction

25    under the local action doctrine.  Even if the Court concludes that it has jurisdiction, it should abstain

26    from exercising it in light of the FCC's exclusive jurisdiction to rule-make in this area.  Finally,

27    Jacen's claims cannot stand because it has failed to plead injury or a violation of the UCL.

28

## II.   STATEMENT OF FACTS

Plaintiff Jacen Management LLC is a limited liability company organized under the laws of Connecticut.  Cmplt., ¶ 3.  Jacen owns an apartment building in Hartford, Connecticut consisting of 16 residential rental units.  *Id.*

DIRECTV is the nation's largest direct broadcast satellite television provider.  To receive DIRECTV's service, a customer must have a satellite dish connected by a cable to at least one integrated receiver-decoder ("receiver") within the customer's home.  The satellite dish may be mounted anywhere with a clear view of the southern sky, where it receives encoded signals transmitted by DIRECTV's fleet of satellites in geosynchronous orbit over the United States.  The signals are decrypted by the receiver and displayed on the customer's television.

Jacen contends that "DIRECTV installs the Equipment by drilling holes in the building and bolting or otherwise permanently affixing the Equipment to the building."  *Id.*, ¶ 8. Jacen alleges that DIRECTV requires its subscribers who reside in rental property to complete a form before the installation of the Equipment ("Permission Form").  *Id.,* ¶ 12.  Part 1 of the Permission Form provides a space for the landlord to sign, indicating his authorization for the installation in writing.  *Id.,* ¶ 11.  Alternatively, in Part 2 of the form, the tenant signs, certifying that they have obtained verbal authorization from the landlord.  *Id.*  The Permission Form states:

DEAR PROSPECTIVE DIRECTV CUSTOMER,

Congratulations on your decision to sign up for DIRECTV® service! You have made the best choice in digital television entertainment and we are confident you will be thrilled with the service.

**To ensure you have a smooth installation experience, if you do not own the residence in which you intend to install your DIRECTV® System, we ask that you obtain landlord approval prior to any installation if necessary.**

Installation of a DIRECTV System may involve modifications to the residence. While these modifications are often minor, standard professional installation many times includes the drilling of holes in order to run cable and attaching a dish securely to the outside of the structure. Any such type of modification may be forbidden pursuant to the terms of your lease/rental agreement or may require pre-approval by the landlord.  **Please be advised that landlord approval is often the case with multi-tenant apartment buildings.**

You should carefully review your lease agreement to determine if you have the right to make such modifications.  **If landlord approval is required, please request that the landlord, or its authorized representative, sign the bottom**

**of this form to acknowledge authorization for the installation and provide this signed form to the DIRECTV technician at the time of installation.  In the alternative, if landlord verbally gives you permission (or if landlord approval is not required pursuant to your lease or rental agreement), please indicate that below and sign as well.**
. . . .

Permission Form, RJN, Ex. A (emphasis added).[1]

Jacen contends that DIRECTV does not seek approval *directly* from the landlord, and relies on the written authorization provided by the landlord in Part 1 of Permission Form or the certification of verbal authorization by the landlord in Part 2 of the form provided by the tenant.[2] *See* Cmplt., ¶ 12.  Jacen makes no allegation that any particular landlord has not, in fact, given its consent for the installation of any particular DIRECTV Equipment on its property.  As to its own property, Jacen alleges:  "Within the past three years, Defendant has provided its service to at least three tenants of residential units at Defendant's [sic] Property, and has permanently and illegally installed and maintained the Equipment in areas of the Property without obtaining any authorization from Plaintiff."  *Id.*, ¶ 18.  Jacen does not identify these tenants, the "areas" where the systems were installed, or the date of the installations.  Notably, Jacen makes no allegation as to whether it gave its consent to the three tenants for the installations.

Jacen pleads claims for a violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* and negligent violation of a "duty not to invade the Property of Plaintiff," and seeks injunctive relief and damages.  Jacen seeks to certify a nationwide class defined as:  "all persons or entities that own and lease residential real estate in the United States … upon which Defendant DIRECTV or its agents … have permanently installed DIRECTV Equipment after obtaining Part 2 of a DIRECTV Release Form to the installation of the Equipment."  Cmplt., ¶ 19.

---

[1]  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).  The court "may treat such a document as part of the complaint, and may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Movassate v. Dudley Ridge Props., LLC,* No. 10-CV-02313-LHK, 2011 WL 672773, at *4 (N.D. Cal. Feb. 16, 2011).

[2]  Jacen does not challenge DIRECTV's use of Part 1 of the Permission Form.

III.   **DISCUSSION**

A.   **This Court Lacks Subject Matter Jurisdiction Over Jacen's Claims Because This Is A Local Action That May Only Be Brought In Connecticut Courts.**

The "local action" doctrine vests exclusive jurisdiction over actions involving land in the forum where the land is located.[3] *Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 108 15 S.Ct. 771, 39 L.Ed. 913 (1895) (finding that the federal court in Ohio "had no jurisdiction of the cause of action" alleging a trespass upon land in West Virginia); *Livingston v. Jefferson,* 15 F.Cas. 660, 664 (Va. Cir. Ct. 1811) (holding that the local action doctrine imparts a limitation on a court's jurisdiction over trespass case); *see also Columbia River Packers' Ass'n v. McGowan,* 219 F. 365, 377 (9th Cir. 1914) ("[W]here the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it must act directly upon the subject-matter, and not upon the person of the defendant the jurisdiction must be exercised in the state where the subject-matter is situated"); *United States v. Byrne,* 291 F.3d 1056, 1060 (9th Cir. 2002) ("The federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries.").

The local action doctrine applies in cases like Jacen's where the action seeks some form of right or interest in real property.  In the Ninth Circuit, the question of whether the action is local or transitory is to be determined by the law of the forum state.  *Josevig-Kennecott Copper Co. v. James F. Howarth Co.,* 261 F. 567, 569 (9th Cir. 1919); *Prawoto v. Primelending,* 720 F. Supp. 2d 1149, 1154 (C.D. Cal. 2010) (district court in Ninth Circuit bound to apply state law in determining local action); *see also Miller & Lux Inc. v. Nickel,* 149 F. Supp. 463, 467 (N.D. Cal. 1957) ("Moreover, there is respectable authority indicating that the state law is to be taken into consideration in settling the local versus transitory question.").  California Code of Civil Procedure

_____

[3]  As explained in the excellent discussion in *Prawoto v. Primelending,* 720 F. Supp. 2d 1149 (C.D. Cal. 2010), the doctrine developed from *Livingston v. Jefferson,* 15 F.Cas. 660 (Va. Cir. Ct. 1811), in which Edward Livingston sued Thomas Jefferson for the federal government's seizure of land along the Mississippi River in New Orleans.  Livingston sued Jefferson in Virginia where he resided.  Chief Justice John Marshall, riding circuit, analyzed the ancient English common law distinction between transitory and local actions.  Justice Marshall held that the cause of action sounded in trespass, and was therefore local and must be brought in New Orleans.  *Id.* at 664.

1    Section 392 defines a local action as one seeking a determination or recovery of an interest in

2    property, as well as for injuries to property.  Cal. Civ. Proc. Code § 392(a).  In applying Section 392,

3    courts "generally look to the main relief sought, as determined from the complaint."  *Prawoto,* 720

4    F. Supp. 2d at 1155 (*quoting K.R.L. P'ship v. Super. Ct.,* 120 Cal.App.4th 490, 496-97 (2004))

5    (*citing Massae v. Super. Ct.,* 118 Cal.App.3d 527, 530 (1981)).

6              In this case, Jacen's proposed remedy under its first claim is an injunction prohibiting

7    DIRECTV from "permanently installing or maintaining Equipment without permission from the

8    Landlord or authorized agent of the Landlord, and requiring DIRECTV to either obtain Landlord

9    consent for all previously installed Equipment or remove that Equipment from the Landlord's

10   property."  Cmplt., ¶¶ 32-33 & Prayer, (b).  Jacen also seeks to recover property damage caused by

11   DIRECTV's alleged wrongful invasion of its property in its second cause of action.  *Id.*, ¶¶ 37-38 &

12   Prayer, (c).

13             Under California law, the "main relief" this case seeks is local in nature.  By its

14   express terms, the proposed two-part injunction seeks to prohibit DIRECTV's unconsented entry

15   onto and modification of real property (i.e., trespass), and to require DIRECTV to remove

16   Equipment affixed to real property.  A suit for an injunction against wrongful possession of land is

17   local and within Section 392.  *Williams v. Merced Irrigation Dist.,* 4 Cal.2d 238, 241 (1935) (Section

18   392 applicable to action for injunction and damages caused by reason of unconsented entry upon

19   land).[4]  The second part of the injunction, an order to remove an encroachment on property, also

20   arises from trespass and is local.  *See, e.g., Warsaw v. Chicago Metallic Ceilings, Inc.*, 35 Cal.3d

21   564, 572-73 (1984) (affirming order for removal of structure completed by underlying landowner

22   which interfered with easement); *Fairrington v. Dyke Water Co.*, 50 Cal.2d 198, 201 (1958)

---

24   [4]  Trespass, which is encompassed within the broader "injury to real property" definition of Section
25   392, may occur not only with unconsented entry upon land, but also if the party, entering pursuant to
     a limited consent, i.e., limited as to purpose or place, proceeds to exceed those limits by divergent
26   conduct on the land of another.  *Restatement (Second) of Torts* § 168 (1965) ("A conditional or
     restricted consent to enter land creates a privilege to do so only in so far as the condition or
27   restriction is complied with."); *Civic Western Corp. v. Zila Indus., Inc.*, 66 Cal.App.3d 1, 17 (1977)
     (trespass committed when defendant had limited authority to enter property to remove personal
28   property but exceeded consent when defendant entered and ejected other landlord's employees and
     changed the locks to the property).

(mandatory injunction requiring removal of such sign as it was an encroachment within an easement).  Similarly, a suit for tort damages arising from damage to a building is also local in nature, even though the relief is monetary.  *Foundation Engineers, Inc. v. Super. Ct.,* 19 Cal.App.4th 104, 111-12 (1993) (holding "[a]n action may essentially be local although it seeks damages" and concluding that "the essence of the action [for construction defect] is for injuries to real property as the alleged damages are to buildings affixed to real property").  As *Foundation Engineers* explained further, "[w]hen an injury to real property or a building affixed to real property or a part of the building is alleged, trial in the county where the building is located will facilitate examination of the alleged damage by expert witnesses and by the fact finder."  *Id.* at 113.  In reaching its decision that the relief pertained to "injury to property" within the meaning of Section 392, the court distinguished other cases where the injury to property arose from breach of a (construction) contract.  *Id.*  Here too, Jacen does not base its claim for property damage on breach of a contract with DIRECTV; it is a tort claim, founded on DIRECTV's alleged illegal trespass on the property.

Therefore in this case, *both* forms of relief sought by the plaintiff are local in nature, thus, there is no question the action is local and the "main relief" rule (used to determine the character of a "mixed" local / transitory action) is unnecessary.  *Massae,* 118 Cal.App.3d at 536 ("if all of the relief should be similarly characterized, the 'main relief rule' will not be needed.").

Beyond the "main relief" rule, the action is local because it is grounded in trespass.  Even though Jacen labels his second cause of action as one for simple negligence, the Court should look at the substance of the allegations rather than the plaintiff's characterization to determine its true nature.  *See, e.g., DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994) (not bound by "well-pleaded complaint" rule, but looks to essence of plaintiff's claim to determine whether plaintiff is attempting to disguise what is essentially a contract claim as a tort of interference with contract); *Jarbough v. Attorney Gen. of U.S.,* 483 F.3d 184, 189 (3d Cir. 2007) (looking beyond the label attached by party to characterize the claim to determine whether the court has jurisdiction over the claim); *Williams v. McDaniel,* 119 F. Supp. 247, 250 (D. Nev. 1953) (looking to the substance of the pleading rather than to its form when plaintiff's so-called second cause of action merely set forth items of damages growing from the transaction or alleged wrong, which was the basis of plaintiff's

first cause of action); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.,* No. MDL 1785, 2008 WL 2308759, at *7 (D.S.C. Apr. 9, 2008) (treating an improper claim for "unjust enrichment" as one for restitution because plaintiff labeled the claim as "unjust enrichment" but gave the elements for restitution based on unjust enrichment).

What Jacen has described as a negligence claim is really a negligent trespass cause of action, as it is based on the duty to not "illegally invade the Property of Plaintiff and Class Members without consent to install the Equipment." Cmplt., ¶ 35. This, of course, defines negligent trespass precisely: "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another. . . . Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong." *Civic Western Corp. v. Zila Indus., Inc.,* 66 Cal.App.3d 1, 16-17 (1977); *Miller v. Nat'l Broad. Co.,* 187 Cal.App.3d 1463, 1480 (1986); *see* 5 Witkin, *Summary of California Law, Torts* § 696 (10th ed. 2005), at 1021-1022. Similarly, Jacen alleges that its UCL claim is tethered to California's criminal trespass statute, and one of the alleged unfair practices is "[e]ntering and encroaching on Plaintiff's and class members' property and illegally installing and maintaining its Equipment for its own profit without authorization from Plaintiff and class members." Cmplt., ¶¶ 30(a), 32. Trespass claims are inherently local, and have been for at least 200 years. *Kingsborough v. Sprint Commc'ns Co.,* 673 F. Supp. 2d 24, 31 (D. Mass. 2009) ("Modern federal courts have consistently read *Livingston* to mean that 'an action for trespass to land, although an *in personam* action seeking monetary relief, was nevertheless local in nature.'") (*citing Hayes v. Gulf Oil Corp.,* 821 F.2d 285, 287 (5th Cir. 1987)).

This case is in many ways similar to *Kingsborough*. In *Kingsborough*, landowners brought a nationwide class action against Sprint and two other telephone companies based on their installation of fiber optic cables on railroad rights-of-way overlying plaintiffs' lands. After years of litigation involving dozens of lawsuits, plaintiffs mediated a global settlement and sought to have it entered in the District of Massachusetts. At the final approval hearing, the court sustained an objection to the settlement based on the local action doctrine and ruled that it lacked subject matter jurisdiction over the non-Massachusetts-based claims. *Id.* at 31-34. The court focused on the nature of claims, which sounded in trespass:

1
2
3
4
5
6
7

> The issues of trespass and land ownership are at the heart of all of [Plaintiffs'] claims, rendering them essentially local in nature . . . . **Plaintiff's primary claim is one for trespass – that is, a claim that Defendants installed fiber-optic cable on his land without his permission.   The other claims also derive from the alleged unlawful use of the land.   In all three claims, the parties' ownership interests in the land are essential elements.   If Defendants have not unlawfully used Plaintiff's land, none of Plaintiff's claims will stand.**   The potential for dispute over land ownership is a major reason that courts have characterized trespass actions as local, and Plaintiff's claims hinge on the dispute over land ownership.  Thus, they are essentially local in nature.

8
9

*Kingsborough,* 673 F. Supp. 2d at 32-33 (emphasis added) (*quoting Hallaba v. Worldcom Network Servs., Inc.,* 196 F.R.D. 630, 647 (N.D. Okla. 2000)).

10   Here, just as in *Kingsborough*, the unauthorized use of land comprises the core of this

11   litigation, and the relief sought is local in nature under California law.  Jacen's chief complaint is

12   that DIRECTV installed satellite equipment on its land without its permission.  Both the negligence

13   and the UCL claims are derived from the alleged unlawful use of Jacen's property, and Jacen's

14   ownership interests in the property are essential elements of each of these claims.  Moreover, as with

15   *Kingsborough*, there are no contract claims at issue here:  Jacen has no contractual relationship

16   whatsoever with DIRECTV.  And, as there, the plaintiff seeks an injunction requiring the removal of

17   the unauthorized property installed by the defendant.  *See Kingsborough,* 673 F. Supp. 2d at 33.

18   Thus, the "heart of the claims presented requires a determination as to the title and land ownership.

19   The case affects the property rights of thousands – if not hundreds of thousands – [of] individual

20   landowners across the United States. . . . The very heart of this matter sounds in trespass and

21   concerns disputes over the ownership of the land." *Id.*

22   In sum, this Court lacks subject matter jurisdiction over this action and therefore must

23   dismiss it, pursuant to Fed. R. Civ. P. 12(b)(1).

24   **B.   <u>DIRECTV Is Also Entitled To Dismissal Under Fed. R. Civ. P. 12(B)(6).</u>**

25   Even if the Court were to conclude that it has subject matter jurisdiction, DIRECTV

26   would still be entitled to dismissal because Jacen has failed to state valid claims under Fed. R. Civ.

27   P. 12(b)(6).  Dismissal should be granted where the Complaint fails to state facts that would support

28   relief.  *See Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Rather, the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The plaintiff must allege a plausible claim for relief.  *See Iqbal,* 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (*quoting Twombly*, 550 U.S. at 556-57).  "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1966).

Dismissal is also required if a claim "presents a cognizable legal theory yet fails to plead essential facts under that theory."  *Marketing Info. Masters, Inc. v. Board of Trustees,* 552 F. Supp. 2d 1088, 1092 (S.D. Cal. 2008); *accord Robertson v. Dean Witter Reynolds, Inc.* 749 F.2d 530, 534 (9th Cir. 1984).  As discussed below, the Court should abstain from hearing Jacen's UCL claim because it interferes with the jurisdiction of the FCC and Jacen has failed to plead facts that establish injury in fact and causation, both of which are essential to Jacen's UCL and negligence claims (Counts I and II).

The numerous and fatal deficiencies with Jacen's class action allegations (Cmplt., ¶¶ 19-27) are set forth more fully in DIRECTV's accompanying Motion to Strike.  With regard to Jacen's allegation that California law "applies to the claims of plaintiff and all class members nationwide," (*id*., ¶ 26), DIRECTV categorically refutes this assertion and strongly disputes the accuracy of the "Class Action Allegations" set forth in the Complaint.  However, it is premature for the Court to conduct the required choice of law analysis, given the paucity of facts at this stage.  *See Portney v. CIBA Vision Corp.,* No. SACV 07-0854, 2008 WL 5505517, at *2 (C.D. Cal. July 17, 2008) (finding that a conflict of law analysis was premature at the motion to dismiss stage).

1    Therefore, for the purposes of this motion, DIRECTV addresses the claims as they are alleged in the

2    Complaint, asserting California law.  DIRECTV reserves all rights to challenge the applicability of

3    California law to Jacen's claims, including but not limited to the material conflicts of law existing

4    between California and Connecticut's consumer protection statutes.

5         **C.**      **The Court Should Dismiss Jacen's UCL Claim Under The Doctrine Of**

6               **Equitable Abstention.**

7         Under California's equitable abstention doctrine, the Court has discretion to dismiss

8    Jacen's UCL claim on the basis that Jacen's request for injunctive relief requires the Court to invade

9    the rulemaking province for satellite dishes exclusively reserved to the FCC.  *See Desert Healthcare*

10   *Dist. v. Pacificare, FHP, Inc.*, 94 Cal. App. 4th 781, 795 (2001) ("because the remedies available

11   under the UCL, namely injunctions and restitution, are equitable in nature, courts have the discretion

12   to abstain from employing them").  It is well-settled that "[j]udicial absention is appropriate when

13   granting the requested relief would require a trial court to assume the functions of an administrative

14   agency, or to interfere with the functions of an administrative agency."  *Alvarado v. Selma*

15   *Convalescent Hosp.,* 153 Cal. App. 4th 1292, 1298 (2007); *see also Shamsian v. Dep't. of*

16   *Conservation,* 136 Cal. App. 4th 621, 642 (2006) (holding equitable abstention barred UCL claim

17   where judicial intervention would "interfere" with the Department of Conservation's "complex

18   statutory arrangement"); *Samura v. Kaiser Foundation Health Plan, Inc.,* 17 Cal. App. 4th 1284,

19   1301-02 (1993) ("the courts cannot assume general regulatory powers over health maintenance

20   organizations through the guise of enforcing … § 17200").

21        By seeking a nationwide injunction, Jacen has asked this Court to assume the role of

22   the FCC and impose significant requirements regarding how DIRECTV, and potentially other

23   satellite television dish providers, are to conduct satellite installations nationwide.  As to

24   DIRECTV's future Equipment installations, Jacen seeks an injunction prohibiting DIRECTV

25   installing Equipment without consent of the landlord.  Cmplt., Prayer, (b).  Although couched in

26   prohibitory terms, effectively this is a mandatory injunction that seeks to impose a requirement that

27   DIRECTV obtain written consent from landlords before conducting any installations.  The entire

28   purpose of Jacen's suit is to challenge DIRECTV's practice of obtaining verbal consent from

landlords in Part 2 of the Permission Form; consequently, it is a fair inference that the relief Jacen seeks is to require DIRECTV to obtain advance written authorization from the landlord in every circumstance.  Indeed, this is the practice that Jacen approvingly alleges DIRECTV's competitor, Dish Network, follows[5] and Jacen does not challenge DIRECTV's use of Part 1 of the Permission Form in which tenants obtain the landlords' written authorization.  *See* Cmplt., ¶14.  The second part of Jacen's requested injunction unquestionably is mandatory and seeks to compel DIRECTV to obtain a *second* authorization from landlords where Equipment has already been installed based on verbal authorizations under Part 2 of the Permission Form, and if the landlords do not consent, DIRECTV must remove the Equipment.  Cmplt., Prayer, (b).

The Telecommunications Act of 1996 granted the FCC "*exclusive jurisdiction* to regulate the provision of direct-to-home satellite services . . . ."  47 U.S.C. § 303(v) (emphasis added).  The Act further mandates that the FCC promulgate regulations to prohibit restrictions that impair a viewer's ability to install, maintain, or use over-the-air reception devices.  *See* § 207 of the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996).  Consistent with Congress' directive, the FCC has implemented an extensive regulatory scheme – including the OTARD Rule – which governs the installation, maintenance, and use of satellite dishes on rental property.  *See In re Preemption of Local Zoning Regulation of Satellite Earth Stations and Restrictions on Over-the-Air Reception Devices*, FCC 98-273, 1998 WL 888546 (F.C.C. Dec. 23, 1998) (hereinafter, "Second Report and Order").  Although the FCC, in its discretion, has to date chosen to limit the OTARD Rule to areas within the exclusive use or control of tenants (*see id.*), the FCC's exclusive authority in the field of satellite dish regulations remains intact.  *See* 47 U.S.C. § 303(v).

Under the FCC's regulations, there is no requirement that satellite dish providers obtain prior written consent from landlords for installation of satellite dish equipment on rental property.  On the contrary, a requirement to obtain prior written consent for installation of satellite dish equipment is inconsistent with the FCC's mandate to remove restrictions, and to limit necessary

---

[5] DIRECTV disputes that this is Dish Network's practice.

1    restrictions to those no more burdensome than necessary.  *See In re Craig Wirth,* CSR 7861-O, 2010

2    WL 4411023 (F.C.C. Nov. 5, 2010) (ruling that association's restriction prohibiting installation of

3    antenna on exterior of unit was unenforceable against renter who installed a satellite dish antenna on

4    his porch); *In re Philip Wojcikewicz,* CSR-6030-0, 2003 WL 22227634 (F.C.C. Sept. 25, 2003)

5    (ruling that association's restrictions requiring prior written consent for installation of antenna on

6    petitioner's roof deemed to be within his exclusive use violated the OTARD Rule); *In re CS*

7    *Wireless Systems, Inc. d/b/a Omnivision of San Antonio,* CSR 4947-O, 1997 WL 631407 (F.C.C.

8    Oct. 14, 1997) (ruling that association's restrictive covenants requiring prior written approval for

9    antenna installation violated the OTARD Rule to the extent they impaired the installation,

10   maintenance or use of over-the-air reception antennas).  Written consent is no more valid than verbal

11   consent and is far more burdensome, and may, as a practical matter, inhibit the installation of

12   satellite dishes when landlords do not timely return written release forms or are not in a position to

13   provide written consent (e.g., if they are not on the premises or do not have access to fax or email, at

14   the time the request is made).

15          Jacen's requested nationwide injunction amounts to a court-ordered rulemaking.  By

16   proceeding in this Court rather than the FCC, Jacen seeks to circumvent the formal procedures

17   already put in place by the FCC to review rulemaking proposals.  Pursuant to 47 C.F.R. § 1.401,

18   "[a]ny interested person may petition [the FCC] for the issuance, amendment or repeal of a rule or

19   regulation."  47 C.F.R. § 1.401(a).  *See also Nat'l Science & Tech. Network, Inc. v. F.C.C.,* 397 F.3d

20   1013, 1014 (D.C. Cir. 2005) (noting there are formal procedures to petition FCC for rulemaking).

21   Given that Congress vested broad powers in the FCC to regulate direct-to-home satellite services, it

22   would be improper for this Court to interfere with the FCC's rulemaking functions.  *See Building*

23   *Owners & Managers Ass'n Int'l v. F.C.C.,* 254 F.3d 89, 92 (D.C. Cir. 2001) (The Commission may

24   "perform any and all acts, make such rules and regulations, and issue such orders … as may be

25   necessary in the execution of its functions.") (*citing* 47 U.S.C. § 154(i)); *see also Opera Plaza*

26   *Residential Parcel Homeowners Ass'n v. Hoang*, No. C. 02-01084 WHA, 2002 WL 1787214 (N.D.

27   Cal. July 22, 2002) (Alsup, J.), *aff'd,* 376 F.3d 831, 836 (9th Cir. 2004) (noting FCC's power to

28   promulgate regulations concerning direct-to-home satellite services).

1       Notably, the FCC permits parties to "petition the Commission for a declaratory ruling

2  under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular

3  restriction is permissible or prohibited under this section."   47 C.F.R. § 1.4000(e).  This limited

4  authorization for the judicial resolution of the validity of a particular restriction on an antennae or

5  satellite dish installation is distinctly different from rulemaking.  The FCC has retained exclusive

6  jurisdiction for rulemaking, pursuant to the Telecommunications Act of 1996.  47 U.S.C. § 303(v).

7  With its sweeping nationwide mandatory injunction, Jacen seeks to adjudicate far more than the

8  issue of whether three satellite dishes have been installed at its Connecticut building in compliance

9  with the OTARD Rule.   In effect, Jacen is asking the Court to significantly alter the legal

10 requirements governing DIRECTV's established practice of conducting satellite installations,

11 regardless of the regulatory and industry-wide consequences that such an injunction would

12 necessarily involve.

13      Under California law, equitable abstention is appropriate where, as here, a plaintiff

14 asks the court to adjudicate conduct under the UCL that implicates a complex regulatory scheme

15 devised and administered by a specific governmental agency with expertise in the area.  *See*

16 *Shamsian,* 136 Cal. App. 4th at 641.  In *Shamsian,* the plaintiff filed a class action suit, alleging that

17 defendants failed to provide convenient, economical, and efficient beverage container redemption

18 opportunities to consumers, in violation of the Beverage Container Recycling and Litter Reduction

19 Act (the "Recycling Act") and the UCL.  In affirming the trial court's dismissal of the action on

20 equitable abstention grounds, the *Shamsian* court explained, "the complex statutory arrangement of

21 requirements and incentives involving participants in the beverage container recycling scheme is to

22 be administered and enforced by the [Department of Conservation] consistent with the Legislature's

23 goals."  *Id.* at 642.

24      *Shamsian* is instructive here.  Just as the plaintiff in *Shamsian* sought to impose

25 affirmative duties that were not required under the Recycling Act on defendants under the guise of a

26 UCL violation, Jacen's request for injunctive relief requiring DIRECTV to change its installation

27 authorization policy seeks to impose an affirmative duty upon DIRECTV that is not mandated under

28 the FCC regulations.  DIRECTV need only comply with the FCC's rules as they exist, not as Jacen

1    believes the rules should be.  The appropriate channel for Jacen to seek its requested relief is to file a

2    petition for rulemaking with the FCC, pursuant to 47 C.F.R. § 1.401(a), and not by means of a court-

3    imposed injunction, which threatens to undermine the FCC's regulatory authority in this field.  The

4    Court should, therefore, dismiss Jacen's UCL claim under the doctrine of equitable abstention.  *See*

5    *Reudy v. Clear Channel Outdoor, Inc.,* No. 02-5438 SC, 2010 WL 4918792, at *1 (N.D. Cal. Nov.

6    29, 2010) (dismissing UCL claim under equitable abstention doctrine, where the injunctive relief

7    sought could have thrown city agency's policy "out of balance"); *Alvarado v. Selma Convalescent*

8    *Hosp.,* 153 Cal. App. 4th 1292, 1303-04 (2007) (affirming demurrer where adjudicating class action

9    suit "would require the trial court to assume general regulatory powers over the health care industry

10   through the guise of enforcing the UCL, a task for which the courts are not well-equipped").

11       **D.    Jacen Fails To Allege The Required Element Of Injury In Fact For Its UCL and**

12           **Negligence Claims.**

13           To plead injury in fact, Jacen must allege a concrete and particularized injury that is

14   actual, and not hypothetical.  *See Renee v. Duncan,* 623 F.3d 787, 796-97 (9th Cir. 2010).  The

15   Complaint fails to allege several essential facts necessary to establish injury in fact.

16           First, Jacen alleges only that Equipment installation occurred "in areas of the

17   Property," without alleging the specific location or what method of installation was used.  Such facts

18   are necessary because, as discussed above, the regulation of satellite dish installations on residential

19   rental property implicates the FCC's OTARD Rule.  *See* 47 C.F.R. § 1.4000(a).  The OTARD Rule

20   "prohibits governmental and non-governmental restrictions that impair a viewer's ability to receive

21   video programming through devices designed for over-the-air reception of DBS, MDS, or television

22   broadcast signals."  *Second Report and Order,* 1998 WL 888546, at *71027.  In 1998, following an

23   extensive notice and public comments period, the FCC issued an amendment to the OTARD Rule,

24   extending the Rule to apply to antenna restrictions "on rental property where the viewer has

25   exclusive use or control."  47 C.F.R. § 1.4000(a).  The Rule provides:

26           (a)(1)   Any restriction, including but not limited to any state or local law or
             regulation, including … building regulations, or any private covenant, contract
27           provision, **lease provision, homeowners' association rule or similar restriction,** on
             property within the exclusive use or control of the antenna user … that impairs the
28           installation, maintenance, or use of [a § 207 device] … [is prohibited] ….

(3)   For the purposes of this section, a law, regulation or restriction impairs installation, maintenance or use of an antenna if it:  (i) Unreasonably delays or prevents installation, maintenance or use; (ii) Unreasonably increases the cost of installation, maintenance or use; or (iii) Precludes reception or transmission of an acceptable quality signal.

47 C.F.R. § 1.4000(a) (emphasis added).

Accordingly, pursuant to the OTARD Rule, lessees of property are permitted to install DIRECTV satellite dishes *without* obtaining landlord consent in spaces under their exclusive use or control within their leasehold.[6]  As described by the FCC,

In practice, under the amendment to our rules, renters will be able, subject to the terms of the Section 207 rules, to install Section 207 reception devices **wherever they rent space outside of a building, such as balconies, balcony railings, patios, yards, gardens or any other similar areas**.

*Second Report and Order*, ¶ 3, 1998 WL 888546, at * 71028 (emphasis added); 47 C.F.R. § 1.4000(a)(1).   A requirement that DIRECTV obtain prior written approval from the landlord – Jacen's requested relief – "unreasonably delays" the installation, increases the cost for subscribers, and is barred by the OTARD Rule.

In light of the FCC's regulatory scheme, DIRECTV is not obligated to obtain Jacen's consent to install Equipment in areas within the exclusive use or control of its tenants.   In the absence of facts establishing the actual location of the installed Equipment, an allegation that DIRECTV installed Equipment in "areas" of Jacen's property without its consent is entirely inadequate to establish that DIRECTV's Permission Form or its alleged installation of Equipment caused any injury.[7]  Accordingly, its claims fail and the complaint should be dismissed.[8]

---

[6]   Certain restrictions are permitted under the OTARD Rule if they serve a legitimate safety or historical preservation objective and are narrowly tailored to accomplish this objective.  47 C.F.R. § 1.4000(b).

[7]   The allegation that DIRECTV installed Equipment "illegally" at Jacen's property (Cmplt. ¶ 18), is entirely conclusory and is not entitled to a presumption of truth.  *See Epstein,* 83 F.3d at 1140 (conclusory allegations of law and unwarranted inferences are not sufficient).  Equally unavailing is Jacen's generalized pleading that a tenant lacks control "over the exterior walls, roof or building common areas pursuant to a residential lease …" Cmplt., ¶ 10.  The scope of a tenant's rights turns on the terms of his particular lease and Jacen fails to attach any lease to this complaint or quote any terms.

[8]   Furthermore, the OTARD Rule provides DIRECTV with a "safe harbor" defense from Jacen's UCL claims.  *See Suzuki v. Hitachi Global Storage Tech., Inc.,* No. C 06-07289 MHP, 2007 WL 2070263, at *3 (N.D. Cal. July 17, 2007) ("Under California law, a defendant is not liable under section 17200 of the California Business and Professions Code for conduct that is clearly permitted

1    Second, Jacen fails to allege that it did not give consent for the installation of satellite

2  dish equipment on its property by DIRECTV.  Jacen alleges only that:  "Within the past three years,

3  Defendant has provided its service to at least three tenants of residential units at Defendant's [sic]

4  Property, and has permanently and illegally installed and maintained the Equipment in areas of the

5  Property without obtaining any authorization from Plaintiff."  Cmplt., ¶ 18.  Although the Complaint

6  alleges that DIRECTV did not obtain authorization directly from Jacen prior to installation of

7  Equipment on Jacen's property, there is no allegation Jacen did not grant authorization directly to its

8  tenants, as stated in the Permission Forms.  If Jacen gave its consent to the installations to its tenants,

9  then it has suffered no injury.  *E.g., Civic Western Corp. v. Zila Indus., Inc.,* 66 Cal.App.3d 1, 16-17

10  (1977) ("The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of

11  another. . . .   Where there is a consensual entry, there is no tort, because lack of consent is an

12  element of the wrong.")  There is no obligation DIRECTV itself obtain consent from the landlord.

13  Again, the complaint inadequately alleges injury and should be dismissed.

14         **E.     For The Same Reasons, Jacen Lacks Standing.**

15             Because the Complaint does not sufficiently allege injury in fact, Jacen's UCL and

16  negligence claims must also be dismissed for lack of standing.  Standing is a threshold issue under

17  Article III of the Constitution and, accordingly, must be satisfied for all claims brought before this

18  Court.  Article III requires that:  (1) plaintiff must have suffered a concrete and particularized "injury

19  in fact" that is actual, not hypothetical; (2) there is a causal connection between the injury and the

20  conduct complained of; and (3) it must be likely, not merely speculative, that the injury will be

21  redressed by a favorable decision.  *Renee v. Duncan,* 623 F.3d 787, 796-97 (9th Cir. 2010) (*citing*

22  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)).  In

23  addition, following the enactment of Proposition 64 in 2004, a UCL claim may be brought only by a

24  "person who has suffered injury in fact and has lost money or property as a result of the unfair

25  competition."  Cal. Bus. & Prof. Code § 17204.  A plaintiff does not satisfy the standing requirement

26  "when 'speculative inferences' are necessary to establish either injury or the connection between the

27

28  by the legislature.") (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th
163, 182 (1999)).

1    alleged injury and the act challenged." *Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 984 (N.D. Cal.

2    2009).

3          For the reasons explained above in Section III.D, Jacen fails to sufficiently allege

4    injury in fact, which is a threshold requirement under Article III and Proposition 64.  Therefore,

5    Jacen lacks standing to pursue the claims against DIRECTV set forth in the complaint.  *See Birdsong*

6    *v. Apple, Inc.,* 590 F.3d 955, 960-61 (9th Cir. 2009) (plaintiffs lacked standing where they did not

7    sufficiently allege injury in fact); *Jadeja v. Redflex Traffic Sys. Inc.,* No. C 10-04287 WHA, 2011

8    WL 499967, at *3 (N.D. Cal. Feb. 8, 2011) (Alsup, J.) (dismissing complaint for lack of standing

9    where plaintiff failed to show that defendants "invaded his alleged interest in freedom from unfair or

10   unlawful business practices"); *Lorenzo v. Qualcomm Inc.,* No. 08cv2124 WQH (LSP), 2009 WL

11   2448375, at *6 (S.D. Cal. Aug. 10, 2009) (lack of standing where the connection between plaintiff's

12   purported injury and defendant's allegedly wrongful conduct was "remote, attenuated and

13   consequential").

14        **F.    Jacen's UCL Claim Should Be Dismissed For Failure To Allege Unfair Conduct**

15               **As a Matter of Law.**

16         California's UCL prohibits any "unlawful, unfair or fraudulent business act or

17   practice."  Cal. Bus. & Prof. Code § 17200 *et seq.*  Jacen alleges that DIRECTV violated the

18   "unfair" prong of the UCL by:  (1) "[e]ntering and encroaching" upon Jacen's property and

19   installing satellite dish equipment without Jacen's authorization, and (2) "[a]dopting and

20   implementing" a policy and practice through use of Part 2 of the Release Form that enables the

21   alleged unauthorized installation of satellite dish equipment upon Jacen's property.  Cmplt., ¶ 30.

22   Neither of these alleged practices, however, constitutes an "unfair" business practice in violation of

23   the UCL.

24        **1.    Jacen Fails to Allege Sufficient Facts To Establish Unfairness Under the**

25               ***Cel-Tech* "Tethering" Test**

26         It has been noted that "California's unfair competition law, as it applies to consumer

27   suits, is currently in flux."  *Lozano v. AT&T Wireless Servs. Inc.,* 504 F.3d 718, 735 (9th Cir. 2007).

28   In *Lozano,* the Ninth Circuit explained that the California Supreme Court had rejected the use of a

balancing test for claims based on the "unfairness" prong of the UCL, as being "too amorphous" and providing "'too little guidance to courts and businesses'" for unfair business practice actions between competitors. *Id.* (*citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 185 (1999)).   Prior to the *Cel-Tech* decision, California appellate courts had broadly construed the definition of "unfair" to refer to any business practice that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See South Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886-87 (1999) (internal citation omitted); *see also Smith v. State Farm Fire,* 93 Cal. App. 4th 700, 718 (1992) (under the balancing test, the court "must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.").

The *Cel-Tech* court deemed it necessary to devise a "more precise test for determining what is unfair under the unfair competition law." 20 Cal. 4th at 185.  Under the *Cel-Tech* test, conduct is "unfair" when it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.  Thus, to establish an unfair practice claim, the court required "that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186-87.

Despite the fact that some California courts have read *Cel-Tech* literally to apply only to cases involving competitors, many courts, including this Court, have applied the *Cel-Tech* test to consumer actions, finding "the rationale of *Cel-Tech* nonetheless compels the conclusion that the unfairness prong must be tethered to some legislative policy, otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike." *Morris v. BMW of North Am., LLC,* No. C 07-02827 WHA, 2007 WL 3342612, at *8 (N.D. Cal. Nov. 7, 2007) (Alsup, J.); *Van Slyke v. Capital One Bank,* No. C 07-00671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007) (Alsup, J.) ("in this Court's judgment … the unfairness prong must also be tethered to some legislative policy"); *see also Churchill Village, L.L.C. v. Gen. Elec. Co.,* 169 F. Supp. 2d 1119, 1130 & n. 10 (N.D. Cal. 2000) (applying *Cel-Tech* test to consumer

1  UCL action); *Simila v. Am. Sterling Bank,* No. 09-CV-781 JLS (CAB), 2010 WL 3988171, at *6

2  (S.D. Cal. Oct. 12, 2010) (finding that the "tethering" test is "more in line with the California

3  Supreme Court's reasoning in *Cel-Tech*" in consumer actions); *Tourgeman v. Collins Fin. Servs.,*

4  *Inc.,* No. 08-CV-01392-JLS-NLS, 2009 WL 6527757, at *7 (S.D. Cal. Aug. 6, 2009) (finding that

5  "the reasoning of the California Supreme Court in *Cel-Tech* leads logically to an application of the

6  'tether' test to consumer UCL suits").[9]

7         Under the *Cel-Tech* tethering test, for an alleged unfair practice to violate the UCL, it

8  must be comparable to an actual violation of legislative policy or spirit of law.  *Cel-Tech,* 20 Cal. 4th

9  at 186-87.  Jacen attempts to tether DIRECTV's Permission Form to California Penal Code § 602, a

10  California state criminal statute prohibiting willful trespass.  Cmplt., ¶ 32.  Jacen alleges that

11  "DIRECTV's aforementioned policies, practices and conduct are inconsistent with the legislatively

12  declared policies embodied in California Penal Code § 602, including without limitation Penal Code

13  § 602(m)." *Id.*

14         California Penal Code § 602(m) provides that any person who willfully commits a

15  trespass by "[e]ntering and occupying real property or structures of any kind without the consent of

16  the owner, the owner's agent, or the person in lawful possession" is guilty of a misdemeanor.[10]  The

17  California Supreme Court has stated that Section 602(m) "requires occupation of the property, a

18  'nontransient, continuous type of possession.'"  *In re Catalano,* 29 Cal. 3d 1, 10 n. 8 (1981).

19  Furthermore, it is not a violation of Section 602(m) "to enter private property without consent unless

20  such entry is followed by occupation thereof without consent.  Nor is it a violation to occupy without

21  consent if the entry be made with consent." *People v. Wilkinson,* 248 Cal. App. 2d Supp. 906, 909-

22  10 (1967) (finding defendants' temporary campsite on private property did not violate California

23  Penal Code § 602(m)); *see also Edgerly v. City & County of San Francisco,* 599 F.3d 946, 954 (9th

24  Cir. 2010) (finding that police officers lacked probable cause to arrest plaintiff for violating Cal.

25

26  [9]  The application of the *Cel-Tech* test is even more compelling here, because Jacen is a limited
    liability real estate company, not a consumer.  Cmplt., ¶ 3.  Thus, the reasoning for why some courts
27  apply the balancing test instead of the *Cel-Tech* test to consumer actions does not apply.  *See Bardin
    v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1268 (2006).
28  [10]  In 2003, California Penal Code § 602(l) was re-lettered as California Penal Code § 602(m).  There
    were no substantive changes to this provision.

1   Penal Code § 602(m) by loitering on private property).

2        The legislative purpose of § 602(m) was "to prevent squatter occupancy."  *See* 2

3   Witkin, *California Criminal Law, The Trespass Statute* § 248 (3d ed. 2000), at 278.  The California

4   legislature's intent in enacting Penal Code § 602(m) is further evidenced by the statement of urgency

5   which accompanied the passage of Assembly Bill 1732 (Penal Code, Section 602(m)) in 1945.  The

6   statement reads:

7              This act is hereby declared to be an urgency measure.  A statement of
             the facts constituting such necessity is as follows: The tremendous
8              increase in the population of this State in the last few years, resulting
             in a particularly heavy influx of people into the centers of defense
9              industries and areas near military camps, has led to a serious housing
             shortage.  In consequence, there has been an alarming increase in
10             squatter occupancy of lands by lawless and irresponsible persons. This
             evil should be corrected at once. To enable the authorities to stamp out
11             this epidemic, it is necessary that this act take immediate effect.

12  *See Wilkinson,* 248 Cal. App. 2d Supp. at 910 (*quoting* Cal. Penal Code § 602(m) legislative

13  history).

14       Implausibly, Jacen asks this Court to infer that the public policy underlying California

15  Penal Code § 602(m) forms the predicate basis for Jacen's two-part UCL claim.  Yet, nowhere in the

16  Complaint does Jacen explain how or why (1) installation of satellite dish equipment on Jacen's

17  property located in Hartford, Connecticut by professional installers in Connecticut, or (2)

18  implementation of a corporate policy vis-à-vis Part 2 of the Release Form amounts to a violation or

19  inconsistency with a *California criminal trespass statute,* enacted to address settlement on land in

20  California by squatters.   To the extent that there have been any unauthorized satellite dish

21  installations on common or restricted access areas of Jacen's property – which, as noted earlier, has

22  not been explicitly pled in the complaint – the residential leases between Jacen and its tenants are

23  implicated – not a California criminal trespass statute.

24       To be clear, Jacen alleges no facts other than DIRECTV's use of Part 2 of the

25  Installation Permission Form in support of its unfair practice claim.  Jacen does not allege that it is

26  DIRECTV's practice to perform installations without first seeking landlord consent through use of

27  the Permission Form.  *See* Cmplt., ¶ 19 (class consists of landlords owning properties where

28  DIRECTV performed installations after obtaining completed Part 2 of the Permission Form).  Nor

does Jacen allege that DIRECTV instructs or encourages its subscribers to falsify their consent forms.  Jacen also fails to allege that any of its three tenants in fact falsified their consent forms by completing Part 2 without obtaining Jacen's consent.[11]  The tenant, of course, is the person with the relationship to the landlord and is in the best position to obtain consent, not DIRECTV.  Moreover, the tenant, not DIRECTV, knows the scope of his lease and whether landlord authorization is required for installation in a particular location.  In short, DIRECTV's alleged wrongful practice consists of instructing the tenant in writing that he may need authorization from his landlord for installation of DIRECTV Equipment and relying on him to obtain it.  These allegations are insufficient to establish any wrongful conduct by DIRECTV, let alone wrongful conduct that is comparable to a criminal trespass violation under California law.

In light of Jacen's failure to plead any wrongful conduct by DIRECTV that can be properly tethered to the legislative policy underlying Penal Code § 602(m), Jacen's UCL claims should be dismissed for failure to satisfy the *Cel-Tech* tethering test.  *See Simila*, 2010 WL 3988171, at *6 (granting 12(b)(6) dismissal where plaintiffs did not sufficiently "tether" their allegations regarding defendants' alleged unfair conduct in servicing loans without regard to plaintiffs' financial condition to any underlying law); *see also Phipps v. Wells Fargo Bank, N.A.,* No. CV F 10-2025 LJO SKO, 2011 WL 302803, at *16-*17 (E.D. Cal. Jan. 27, 2011) (granting 12(b)(6) dismissal of UCL unfair claim where plaintiff alleged "nothing meaningful" to substantiate an UCL unfair practice claim); *Gregory v. Albertson's, Inc.,* 104 Cal. App. 4th 845, 855 (2003) (rejecting plaintiff's unfair practice claim where plaintiff sought "an extension of the policy that depart[ed] from the primary focus of the statute"); *Scripps Clinic v. Super. Ct.,* 108 Cal. App. 4th 917, 941 (2003)

---

[11]   Instead, Jacen stops short of such a claim, pleading that "DIRECTV has financial incentive to obtain as many subscribers as possible" and that "tenants have little interest in obtaining their landlord's written permission when offered the simple alternative of providing DIRECTV with Release Form Part 2, which they could easily complete without actually obtaining any permission at all …." Cmplt., ¶ 13.  If Jacen intends to insinuate that its tenants have fraudulently executed consent forms, the complaint does not plead this allegation with sufficient particularity, nor does it warrant an inference that DIRECTV has engaged in any fraudulent conduct.  *See Rosal v. First Fed. Bank of Cal.,* 671 F. Supp. 2d 1111, 1127 (N.D. Cal. 2009) ("when averments of fraud are made, the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Fed. R. Civ. P. 9(b) heightened pleading standard to UCL claim sounding in fraud).

1   (rejecting plaintiffs' unfair practice claim where plaintiffs attempted to tether alleged unfair practice

2   to a right that did not exist).

3          2.      **The Complaint Fails to Allege Sufficient Facts Under the Other Unfair**

4                  **Practices Tests.**

5          Even if the Court were to apply the balancing test criticized in *Cel-Tech* to Jacen's

6   UCL claim, it still would fail as a matter of law because Jacen's allegations consist of nothing more

7   than a formulaic recitation of the *South Bay* balancing test, without any facts alleged to support the

8   claims.  Jacen pleads only that:  "These acts offend established public policies or are immoral,

9   unethical, oppressive, unscrupulous or substantially injurious to consumers.  Alternatively, these acts

10  cause harm to class members which outweigh any utility flowing from them."  Cmplt., ¶ 31.  The

11  mere "formulaic recitation" of the pre-*Cel-Tech* legal standard in the Complaint is not sufficient to

12  state a claim under *Twombly*.  *See Twombly,* 550 U.S. at 555 ("a formulaic recitation of the elements

13  of a cause of action will not do").  Nothing about DIRECTV's Permission Form or its installation

14  practice, as alleged by Jacen in the complaint, supports a finding that DIRECTV's conduct was

15  immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  Jacen

16  concedes that DIRECTV "requires its subscribers to execute a written release form" prior to the

17  installation of DIRECTV Equipment on rental property.  Cmplt., ¶ 11.  Furthermore, the complaint

18  fails to allege that DIRECTV has done anything to encourage, facilitate, or participate in any

19  conduct by Jacen's tenants to avoid obtaining installation authorization.  In short, the complaint's

20  allegations cannot establish that DIRECTV's installation procedure caused harm to Jacen or the

21  other class members.  On the contrary, there is significant utility in permitting tenants to obtain

22  verbal authorization from landlords for installations, including the practical considerations that

23  landlords are often easier to reach via telephone and may not be on the premises at the time the

24  request is made.  Therefore, Jacen's UCL claims do not amount to an unfair practice even under the

25  *South Bay* balancing test.  *See Buena Vista, LLC v. New Resource Bank,* No. C 10-01502 CW, 2011

26  WL 250361, at *7 (N.D. Cal. Jan. 26, 2011) (granting 12(b)(6) dismissal of UCL unfair claim under

27  the policy standard where "none of the acts alleged amount[ed] to unscrupulous conduct").

28          Jacen also pleads an unfair practice claim under the Federal Trade Commission

("FTC") section 5 standard.[12]   Cmplt., ¶ 32.   This Court has observed that the Ninth Circuit "expressly rejected that test in *Lozano*, stating that while '*Cel-Tech* effectively rejects the balancing approach, we do not agree that the FTC test is appropriate in this circumstance.'"   *Morris*, 2007 WL 3342612, at *7.   Therefore, according to the Ninth Circuit, "the remaining options are to apply *Cel-Tech* directly … and require that the unfairness be tied to a 'legislatively declared' policy or to adhere to the former balancing test under *South Bay*."   *Lozano,* 504 F.3d at 736 (internal citations omitted).   Nevertheless, even under the section 5 test, Jacen's UCL claims warrant dismissal, because Jacen merely recites the section 5 test, without alleging any facts to support any of the three factors.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant DIRECTV's motion to dismiss Jacen's Complaint in its entirety.

DATED:  March 15, 2011          ANDREW E. PARIS
                                GRACE W. KANG
                                SAYAKA KARITANI
                                **ALSTON & BIRD LLP**


                                 /s/  Andrew E. Paris
                                          Andrew E. Paris
                                Attorneys for Defendant
                                **DIRECTV, INC.**

---

[12] The "Section 5" test is:  (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.   15 U.S.C. § 45(n); *see also Camacho v. Auto. Club of Southern Cal.,* 142 Cal. App. 4th 1394 (2006).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this **DIRECTV'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM IN SUPPORT THEREOF,** via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 15, 2011.  Any other counsel of record was served via First Class Mail.

<u>/s/ Andrew E. Paris</u>
Andrew E. Paris